# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 30, 2015 Session

## JAMES R. VANDERGRIFF ET AL. v. PARKRIDGE EAST HOSPITAL ET AL.

### Appeal from the Circuit Court for Hamilton County
### No. 14C1038      W. Jeffrey Hollingsworth, Judge

---

### No. E2014-02253-COA-R3-CV-FILED-AUGUST 21, 2015

---

The parents of a minor child filed a pro se complaint asserting claims on behalf of their daughter and individual claims by each parent. The complaint alleges that the daughter was born with brain injuries and remains severely disabled due to the failure of health care providers to treat her mother for a severe womb infection during two hospitalizations preceding birth. Plaintiffs also allege that the complaint was filed timely, although it was filed ten years after birth, because the defendants fraudulently concealed the fact that the mother was not treated for the infection. The complaint states that the parents learned of the infection in 2012 when they obtained medical records that included a previously-undisclosed placenta pathology report. The defendants responded to the complaint by filing Tenn. R. Civ. P. 12.02(6) motions to dismiss the parents' individual claims pursuant to the one-year statute of limitations, Tenn. Code Ann. § 29-26-116(a)(1)-(2), and the daughter's claims based upon the three-year statute of repose, Tenn. Code Ann. § 29-26-116(a)(3). The trial court dismissed the parents' individual claims because the complaint established that the parents learned of the infection no later than December 31, 2012, yet another eighteen months passed before the complaint was filed. As for the daughter's claims, the trial court concluded that her claims were barred by the statute of repose. Plaintiffs appealed, contending that it was error to dismiss their individual claims based upon the statute of limitations and the daughter's claims on the statute of repose. We affirm the dismissal of the parents' claims as barred by the statute of limitations because the complaint indicates that in 2012 the plaintiffs had sufficient facts to put a reasonable person on notice that they had been injured by the defendants' negligence, and they failed to file their claims in a timely manner thereafter. As for the minor child's separate claims, they were asserted in a pro se complaint filed by her parents, and neither of her parents is a licensed attorney. Although a parent "may sue or defend" on behalf of their minor child, *see* Tenn. R. Civ. P. 17, a parent who is not "duly licensed" may not engage in the "practice of law" on behalf of their minor child. *See* Tenn. Sup. Ct. R. 7, § 1.01; Tenn. Code Ann. § 23-3-103(a). A claim asserted in a pleading by a person who is not entitled to practice law is a nullity. *Bivins v. Hosp. Corp. of Am.*, 910 S.W.2d 441, 447 (Tenn. Ct. App. 1995); *see Investors Grp., I Ltd. v. Knoxville's Cmty. Dev. Corp.*,

No. E1999-00395-COA-R3-CV, 2001 WL 839837, at \*2 (Tenn. Ct. App. July 25, 2001). Because the parents' attempt to assert claims on behalf of their daughter was a nullity, *see Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996), the trial court's judgment on the merits of the minor's purported claims is vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in part and Vacated in part**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

James R. Vandergriff and Samantha J. Vandergriff, Pro se.

H. Dean Clements and Brie Allaman Stewart, Chattanooga, Tennessee for the appellees, ParkRidge East Hospital.

F. Laurens Brock, Rocklan W. King III, and Donna L. Boyce, Nashville, Tennessee for the appellees, Richard J. Bowers, M.D., Elizabeth M. Bowers, M.D., and Chattanooga Women's Specialist, P.C.

Arthur P. Brock and Drew H. Reynolds, Chattanooga, Tennessee, for the appellees, Shawn P. Stallings, M.D. and Regional Obstetrical Consultants, P.C.

**OPINION**

James R. Vandergriff ("Father") and Samantha J. Vandergriff ("Mother") are the parents of a daughter, Catherine, who was born with severe disabilities allegedly as the result of the negligence of ParkRidge East Hospital and several healthcare providers (collectively "Defendants").[1]

On March 10, 2004, while Mother was pregnant with Catherine, Mother was admitted to ParkRidge East Hospital ("ParkRidge") after problems developed with her pregnancy. Mother remained at ParkRidge from March 10-17, 2004. The tests conducted on Mother during that time revealed that she was suffering from an infection. Although

---

[1]Collectively, Mother, Father, and Catherine will be referred to as "Plaintiffs." There are several defendants in this case. Briefly, their relationships to the litigation are as follows: Mother was under the care of Dr. Richard Bowers, Dr. Elizabeth Bowers, and Chattanooga Women's Specialist during her pregnancy in 2003 and 2004. She was also treated by Dr. Shawn Stallings and Regional Obstetrical Consultants because her pregnancy was high risk. ParkRidge East Hospital treated Mother on two relevant occasions: one from March 10-17, 2004, and the second from March 21-24, 2004. Dr. R. Bowers, Dr. E. Bowers, and Dr. Stallings were also involved in Mother's treatment at ParkRidge.

the discharge summary from this hospital stay indicates that Mother was treated for this infection, Plaintiffs contend that the discharge summary was intentionally falsified and that Mother did not actually receive the proper treatment.

On March 21, 2004, Mother was readmitted to ParkRidge. Catherine was born very prematurely later that day. Catherine remained in the NICU ward for more than two months until she was discharged on June 10, 2004. It is undisputed that Catherine was born with brain damage and will be severely disabled for the rest of her life.

Ten years later, on August 25, 2014, a pro se complaint was filed by "James R. Vandergriff, individually, as (father and legal guardian) of Catherine E. Vandergriff and Samantha J. Vandergriff, individually, as (mother and legal guardian) of Catherine E. Vandergriff . . . ." The complaint, which asserted separate claims on behalf of the parents and Catherine, alleged that Catherine's injuries were the result of Defendants' failure to treat Mother's infection during her March 10-17 hospital stay.[2] Mother and Father signed the complaint, but the complaint was not signed by an attorney.

As stated in the complaint, Plaintiffs attributed the delay in filing the lawsuit to fraudulent concealment of the medical treatment Mother did and did not receive during her March 10-17 hospital stay. In relevant part, the complaint states:

34. We never knew about the severe infection that was present at our daughter's birth because the truth was hidden from us. At the time, were [sic] not aware of the severe womb infection because the information was never documented into the medical records we received.

35. In 2012, we learned about the severe womb infection. We obtained medical records for the second time, which the second set of medical records had a placenta pathology report not previously disclosed to either Samantha J. Vandergriff nor [sic] myself, James Vandergriff.

36. The placenta pathology report states (Acute Chorioamnioitis Funitis and villous necrosis). This is a very severe womb infection which was longstanding because Samantha J. Vandergriff was left untreated during her March 10, 2004 to March 17, 2004 [stay] at ParkRidge East Hospital.

---

[2] When a tort is committed against a child, two separate causes of action arise: a cause of action in favor of the parents for loss of service and medical expenses and a separate cause of action in favor of the child for the elements of damage to her, such as pain and suffering. *Dudley v. Phillips*, 405 S.W.2d 468, 469 (Tenn. 1966) (quoting 42 A.L.R. 722, 724).

Defendants responded to the complaint by filing motions to dismiss. They contended that the parents' individual claims were barred by the statute of limitations because they had been brought more than one year after Plaintiffs discovered the alleged injury. *See* Tenn. Code Ann. § 29-26-116(a)(1)-(2) (2014). Defendants also contended that Catherine's separate claims were barred by the three-year statute of repose applicable to health care liability actions. *See* Tenn. Code Ann. § 29-26-116(a)(3) (2014). Plaintiffs did not file any responses to the motions to dismiss, but Father and Mother did attend the hearing on the motions.

On October 14, 2014, the trial court entered an order dismissing all claims. The court concluded that the parents' claims were barred by the statute of limitations. The court noted that Paragraph 35 of the complaint established that the parents learned of the infection that caused Catherine's injury on or before December 31, 2012; therefore, the one year limitation period would have begun on that date at the latest. Assuming Mother and Father filed the required pretrial notices on the last possible date, December 31, 2013, the statute of limitations would have been extended to April 30, 2014.[3] *See* Tenn. Code Ann. § 29-26-101(c) (2014). The complaint was not filed until August 2014; therefore, the parents' individual claims were time barred.

With regard to Catherine's claims, the trial court concluded that they were time-barred by the statute of repose. The trial court reasoned that, although fraudulent concealment tolled the statute of repose, any fraudulent concealment was uncovered on or before December 31, 2012 when her parents learned of the infection that caused Catherine's injuries.[4] Accordingly, Catherine's claims had to be filed no later than April 30, 2014, the deadline for filing her parents' claims. *See* Tenn. Code Ann. § 29-26-116(a)(3). Because the complaint was filed more than one year after the fraudulent concealment of the claims was discovered, Catherine's claims were barred by the statute of repose.

Plaintiffs filed a timely notice of appeal. On appeal, Plaintiffs contend that it was error to dismiss the parents' claims as barred by the statute of limitations and to dismiss Catherine's claims as barred by the statute of repose.

---

[3]When a plaintiff provides proper statutory notice, the statute of limitations is extended for 120 days from the date it would have expired. *See* Tenn. Code Ann. § 29-26-101(c) (2014).

[4]Because Catherine was a minor when her claim accrued, the statute of limitations was tolled until she reached age 18. *See* Tenn. Code Ann. § 28-1-106 (2014). However, Catherine's claims were filed in August 2014, and "the plaintiff's minority does not toll the [health care liability action] statute of repose" for claims filed after December 9, 2005. *See Calaway v. Schucker*, 193 S.W.3d 509, 518 (Tenn. 2005), *as amended on reh'g in part* (Feb. 21, 2006).

## ANALYSIS

### I. PRO SE LITIGANTS

We are mindful of the fact that Father and Mother are representing themselves in this litigation although they have no legal training and little familiarity with the judicial system. Parties who represent themselves (pro se litigants) are entitled to fair and equal treatment by the courts; nevertheless, "the courts must be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Young v. Barrow*, 130 S.W.3d 59, 62 (Tenn. Ct. App. 2003). Therefore, courts may "not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Id*. As we have explained:

> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.
>
> Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants.

*Id.* at 63 (internal citations omitted).

### II. TENNESSEE RULES OF APPELLATE PROCEDURE

Before discussing the substance of Plaintiffs' arguments, it is important to acknowledge that we may only consider "those facts established by the evidence *in the trial court* and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to Rule 14." *See* Tenn. R. App. P. 13 (emphasis added). Plaintiffs rely, in part, on several documents Plaintiffs filed with the circuit court clerk *after* the trial court dismissed their claims. These documents include medical records and letters to Plaintiffs from attorneys they consulted prior to filing the complaint. Because these documents were never admitted into evidence in the trial court, we may only consider them if they are subject to judicial notice or fall under Rule 14. *See id.*

The statements contained in these documents are not properly the subject of "judicial notice." In order for a fact to be judicially noticed, it must be "one not subject to reasonable dispute" and either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201. Judicial

notice is "an acceptance by a court, for purposes of convenience and without requiring . . . proof, of a well-known and indisputable fact." *Mayfield v. Mayfield*, 395 S.W.3d 108, 119 (Tenn. 2012). Information about Mother's medical treatment and letters from attorneys do not fit this description.

Furthermore, we cannot consider these documents under Tenn. R. App. P. 14. Rule 14 permits this court, at its discretion, to consider "facts concerning the action that occurred *after judgment*." Tenn. R. App. P. 14(a) (emphasis added). These documents concern events that occurred *before* this lawsuit was filed and not facts that occurred *after* the trial court issued the order dismissing Plaintiffs' claims. Accordingly, we cannot consider them on appeal. *See* Tenn. R. App. P. 13(c); *Box v. Gardner*, No. W2012-00631-COA-R3-CV, 2012 WL 6697579, at *5 n.6 (Tenn. Ct. App. Dec. 26, 2012).

We now turn to the substance of the issues Plaintiffs have raised on appeal.

III. CATHERINE'S CLAIMS

In the complaint, Mother and Father asserted claims on behalf of Catherine, as her parents and legal guardians, in addition to the individual claims they asserted themselves. The complaint, which was prepared by Father, was signed by Mother and Father but not by a licensed attorney. Indeed, none of the pleadings filed by Plaintiffs were signed by an attorney. Father additionally served as Catherine's advocate in the trial court proceedings and during oral argument in this court.

We note with great respect and admiration Father's love and devotion for his daughter, Catherine, and for Mother, which are evident from his tireless efforts to advocate on his daughter's behalf in these proceedings. Unfortunately, as we explain below, because neither Father nor Mother is a licensed attorney, they were not authorized to assert Catherine's separate claims unless a licensed attorney also signed the complaint.

Under Tennessee law, any person may conduct and manage his or her own case in any court of this state. Tenn. Code Ann. § 23-1-109. Therefore, Mother is authorized to represent herself, and Father is authorized to represent himself. However, the right of self-representation only allows an individual to conduct and manage "the person's *own* case in any court of this state." *See id.* (emphasis added). Accordingly, pro se litigants may not litigate on behalf of another individual.

We are mindful of the fact that parents may "sue or defend" a suit on behalf of their minor children in certain circumstances, *see* Tenn. R. Civ. P. 17.03; however, parents may not file a court pleading on behalf of a child, *i.e.*, a complaint, unless it is signed by a licensed attorney. In relevant part, Rule 17.03 provides:

- 6 -

Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, or if justice requires, he or she may sue by next friend.

*Id.*

Rule 17.03 exists because minors cannot maintain lawsuits in their own names. *See Busby v. Massey*, 686 S.W.2d 60, 62 (Tenn. 1984). "Minors cannot act for themselves in contracting with counsel and otherwise making provisions to institute [lawsuits]." *Id.* at 63. In such situations, they must rely on others to act for them. *Id.*; *see Holley v. Blackett*, No. W2011-02115-COA-R3-CV, 2012 WL 4799053, at *4 (Tenn. Ct. App. Oct. 10, 2012). Accordingly, Rule 17.03 permits minors to sue "by next friend" even when a guardian has not been officially appointed to represent them. *See* Tenn. R. Civ. P. 17.03.

A "next friend" is "[a] person who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian." Black's Law Dictionary 897 (9th ed. 2010); *see March v. Levine*, No. 01-A-01-9708-PB00437, 1999 WL 140760, at *3 (Tenn. Ct. App. May 17, 1999) ("A next friend is someone who is capable of protecting the interests of the person under the legal disability, who will be liable for the costs, and against whom the court can make and enforce its orders."). Although parents may raise the claims of their children, their status as "next friends" does not make them "technically [or] substantially a party" to the minor's claims. *See Holley*, 2012 WL 4799053, at *4 (quoting *Williams v. Gaither*, 101 S.W. 917, 918 (Tenn. 1918)).

While Rule 17.03 allows a parent to "sue" on behalf of a minor child, the rule does not authorize a parent to practice law while acting on behalf of the child. To the contrary, only licensed attorneys may engage in the "practice of law" in Tennessee. Tenn. Sup. Ct. R. 7, §1.01; *see* Tenn. Code Ann. § 23-3-103(a). In Tennessee, the practice of law "relates to the rendition of services for others that call for the professional judgment of a lawyer." *Petition of Burson*, 909 S.W.2d 768, 775 (Tenn. 1995) (quoting Tenn. Sup. Ct. R. 8, EC 3-5). Under this standard, the Supreme Court has held that preparing and filing a complaint on behalf of another constitutes the practice of law because it requires a lawyer's professional judgment. *See Old Hickory Engineering and Mach. Co., Inc. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996). Similarly, according to the Tennessee Code, the practice of law includes "the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court . . . ."

Tenn. Code Ann. § 23-3-101(3).[5] Based on these definitions, it is clear that Mother and Father must be licensed to practice law in order to file a complaint on Catherine's behalf and to appear as advocates for her in court.

Federal law is consistent with Tennessee on the subject of a parent asserting claims of a minor child. Individuals have the right to represent themselves in federal court. *See* 28 U.S.C. § 1654. Additionally, the Federal Rules of Civil Procedure allow representatives to raise the claims of minor children. *See* Fed. R. Civ. P. 17(c)(2) ("A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."). However, federal courts have interpreted these provisions to prohibit parents from representing their children pro se. "[P]arents cannot appear pro se on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *See Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2002); *accord Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 400-01 (4th Cir. 2005) ("We therefore join the vast majority of our sister circuits in holding that non-attorney parents generally may not litigate the claims of their minor children in federal court."). Other federal courts have expressly stated that "a parent who is not an attorney must be represented by legal counsel in bringing an action on behalf of his or her minor children." *Osei-Afriyie by Osei-Afrieyie v. Med. Coll. of Pa.*, 937 F.2d 876, 878 (3d Cir. 1991); *see Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *see also Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.").

Neither Mother nor Father is a licensed attorney. Therefore, they may not file a pro se complaint that asserts claims on Catherine's behalf or appear in court as a legal advocate for her. *See Old Hickory Engineering*, 937 S.W.2d at 786; *Petition of Burson*, 909 S.W.2d at 776-77; *see also* Tenn. Code Ann. §§ 23-3-101, -103. Furthermore, no licensed attorney signed the complaint in which Father and Mother attempted to assert claims on behalf of Catherine. Because the complaint was not signed by a licensed attorney, Mother and Father's well-meaning attempt to assert Catherine's claims in the

---

[5]The Supreme Court of Tennessee "possesses the sole and exclusive authority to regulate the practice of law and define the unauthorized practice of law." *Tennessee Envtl. Council, Inc. v. Tennessee Water Quality Control Bd.*, 254 S.W.3d 396, 403 (Tenn. Ct. App. 2007) (citing *Petition of Burson*, 909 S.W.2d 768, 773) (Tenn. 1995)). Accordingly, the Supreme Court is not bound by the General Assembly's definition of the "practice of law" in Tenn. Code Ann. § 23-3-101. However, the Supreme Court has essentially adopted this definition with the caveat that the acts enumerated in it constitue the practice of law only if they require the professional judgment of a lawyer. *See Petition of Burson*, 909 S.W.2d at 776-77; *see also* Tenn. Op. Att'y Gen. No. 94-101 (Sept. 9, 1994).

complaint was not effective.[6] Proceedings in a suit by a person not entitled to practice law are a nullity, and "[a]n attempted appeal of a person not licensed to practice law, purporting to represent another, will be dismissed." *Bivins v. Hosp. Corp. of Am.*, 910 S.W.2d 441, 447 (Tenn. Ct. App. 1995) (citing 7 C.J.S. Attorney and Client § 31, p. 869, n.13 & n.20); *see Investors Grp., I Ltd. v. Knoxville's Cmty. Dev. Corp.*, No. E1999-00395-COA-R3-CV, 2001 WL 839837, at *2 (Tenn. Ct. App. July 25, 2001) (holding that a complaint filed on behalf of a limited partnership and signed only by a non-attorney was "void").

Something that is "void" has no legal effect. *See* Black's Law Dictionary 1349 (9th ed. 2010). Another legal dictionary defines "void" as "absolutely null," going on to describe an order that is "void ab initio" as "that which is void in the beginning, [which] cannot be cured by waiver, acquiescence or lapse of time." Bryan A. Garner, A Modern Legal Dictionary 920 (2d ed. 2005).

Because the complaint was void as to Catherine's claims, it was insufficient to commence an action on her behalf, and neither Catherine nor her claims were properly before the trial court. *See* Tenn. R. Civ. P. 3 (proving that every civil action commences when a complaint is filed). This is of the utmost significance because a decree is "void as to any person shown by the record itself not to have been before the Court *in person or by representation.*" *See Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996) (emphasis added); *see also Tate v. Ault*, 771 S.W.2d 416, 419 (Tenn. Ct. App. 1988) (noting that a judgment is void if the court rendering it lacked jurisdiction over the subject matter or the parties).

For the reasons stated above, neither Catherine nor her claims were before the trial court; therefore, the trial court's judgment is void to the extent it ruled on the merits of Catherine's purported claims.[7] *See Gentry*, 924 S.W.2d at 680.

We shall now turn our attention to the individual claims asserted by Father and Mother.

---

[6] This does not affect the validity of the claims Mother and Father asserted on their own behalf.

[7] Neither of the parties raised the issue of whether Catherine or her representatives were properly before the trial court. Nevertheless, neither Catherine nor her representatives were properly before the trial court, and a decree is void as to any person not to have been before the court "in person, or by representation," *Gentry*, 924 S.W.2d at 680, and we may not affirm a void judgment for the void judgment never came into existence. *See Inman v. Raymer*, No. E2003-01964-COA-R3-CV, 2004 WL 948386, at *2 (Tenn. Ct. App. May 4, 2004) ("A void decree is in the same plight as though it never existed.") (quoting *West v. Jackson*, 186 S.W.2d 915, 917 (Tenn. Ct. App. 1944)).

## IV. FATHER AND MOTHER'S INDIVIDUAL CLAIMS

Defendants filed Tenn. R. Civ. P. 12.02(6) motions to dismiss the parents' claims on numerous grounds including the one-year statute of limitations applicable to health care liability claims, codified at Tenn. Code Ann. § 29-26-116(a)(1). Consistent with a decision on a Rule 12 motion to dismiss, the trial court's memorandum opinion and order states: "In deciding these motions, the Court takes all the Plaintiffs' allegations in their complaint as being true." Following its analysis of the complaint, the court dismissed "any claims" by Father and Mother against Defendants.[8] Father and Mother contend that the trial court erred by dismissing their individual claims as barred by the statute of limitations. We find no error with the trial court's ruling as it pertains to the parents' claims.

When adjudicating a Tenn. R. Civ. P. 12.02(6) motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). We review the trial court's decision on a motion to dismiss de novo without a presumption of correctness. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 238 (Tenn. 2014). Similarly, the determination that a suit should be dismissed based on the statute of limitations presents a question of law, which we review de novo with no presumption of correctness. *Redwing*, 363 S.W.3d at 456.

The parents' claims were dismissed as time barred by the one-year statute of limitations applicable to health care liability claims. *See* Tenn. Code Ann. § 29-26-116(a)(1). In Tennessee, health care liability actions are "any civil action . . . alleging that a health care provider or providers have caused an injury related to the

---

[8]Defendants filed motions to dismiss; however, the trial court's order states: "Summary judgment is issued as to any claims by [Father] and [Mother] against these Defendants based on the expiration of the statute of limitations." Converting a motion to dismiss under Rule 12.02(6) into a motion for summary judgment is appropriate when "matters outside the pleading are presented to and not excluded by the [trial] court . . . ." Tenn. R. Civ. P. 12.02. The trial court's order does not state what "matters outside the pleading" it considered, and our review of the record has not revealed anything the trial court could have considered that is relevant to the statute of limitations issue other than the complaint. Moreover, consistent with a decision on a Rule 12 motion to dismiss, the order states that the trial court presumed that all the allegations in the complaint were true. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002); *see also Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 689 (Tenn. 1996) (noting that courts are not required to presume that the allegations in the complaint were true in the context of a motion for summary judgment). Because it is clear that the trial court did not consider any matters outside of the pleadings when it dismissed Plaintiffs' complaint, we will review the trial court's decision as a decision to grant a motion to dismiss rather than a motion for summary judgment.

provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1) (2014). There is no dispute that Defendants are "health care providers" as defined by statute and that all of Plaintiffs' claims relate to "the provision of, or failure to provide, health care services to a person . . . ." *See* Tenn. Code Ann. § 29-26-101(a)(2) (2014). Accordingly, Plaintiffs' claims had to be filed within one year from the time their cause of action accrued. *See* Tenn. Code Ann. § 29-26-116(a)(1).

Defenses based on the statute of limitations require us to consider both the accrual of the cause of action and the applicability of any tolling doctrines. *See Redwing*, 363 S.W.3d at 456. Generally, a cause of action for an injury accrues when the injury occurs. *See Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000). However, when the alleged injury in a health care liability cause of action "is not discovered within [the one-year statute of limitations period], the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). Plaintiffs contend that they did not discover their cause of action until 2013 because Defendants fraudulently concealed their failure to treat Mother's infection during her March 10-17 hospital stay.

By making this allegation, Plaintiffs have invoked the discovery rule. Under the discovery rule, a health care liability cause of action accrues when "one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury." *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010); *see Burk v. RHA/Sullivan*, 220 S.W.3d 896, 900-01 (Tenn. Ct. App. 2006). The discovery rule does not toll the statute of limitations until plaintiffs actually know that they have a cause of action. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). Instead, plaintiffs are "deemed to have discovered the right of action when [they] become[] aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct." *Id.* (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). Thus, the discovery rule does not allow plaintiffs to delay filing their complaints until they know the specific type of legal claim they have or all the facts that affect the merits of a claim. *Redwing*, 363 S.W.3d at 459. "Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a [health care liability] cause of action." *Sherrill*, 325 S.W.3d at 595.

Additionally, Plaintiffs' allegations have invoked the doctrine of fraudulent concealment, a tolling doctrine closely related to the discovery rule. *See Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001) ("In a discovery rule case, the plaintiff may claim that the defendant intentionally prevented him from discovering his injury. Where that claim is proved true, the doctrine of fraudulent concealment applies.") (internal quotation marks omitted). The doctrine of fraudulent concealment tolls the statute of limitations when the defendant purposefully engages in conduct intended to conceal the

- 11 -

plaintiff's injury or the identity of the person who caused the plaintiff's injury. *See Redwing*, 363 S.W.3d at 462. Like the discovery rule, the effects of the doctrine of fraudulent concealment cease when the plaintiff "discovers or should have discovered the defendant's fraudulent concealment or *sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim . . . .*" *Id.* at 463 (emphasis added). Therefore, under both the discovery rule and the doctrine of fraudulent concealment, Plaintiffs were required to file their lawsuit within one year from the time they had sufficient facts to provide them with actual or constructive notice of their claims. *See id.*; *Pero's*, 90 S.W.3d at 621; Tenn. Code Ann. § 29-26-116(a)(2)-(3).

Here, it is clear that Plaintiffs had actual or constructive knowledge of their claims in 2012 because their complaint states:

> 35. In 2012, we learned about the severe womb infection. We obtained medical records for the second time, which the second set of medical records had a placenta pathology report not previously disclosed to either Samantha J. Vandergriff nor [sic] myself, James Vandergriff.

> 36. The placenta pathology report states (Acute Chorioamnioitis Funitis and villous necrosis). This is a very severe womb infection which was longstanding because Samantha J. Vandergriff was left untreated during her March 10, 2004 to March 17, 2004 [stay] at ParkRidge East Hospital.

These paragraphs establish that Plaintiffs knew sufficient facts to put them on notice that they had been injured as a result of Defendants' wrongful conduct in 2012. *See Redwing*, 363 S.W.3d at 459. According to the complaint, by 2012 Plaintiffs knew that an injury had occurred because of an infection that existed as a result of Defendants' failure to properly treat Mother. Plaintiffs may not have known the extent of their injuries or of Defendants' wrongful conduct, and Mother's medical records may not have been reviewed by an attorney or medical expert, but the absence of these things does not allow a potential plaintiff to delay filing suit. *See id.*; *Sherrill*, 325 S.W.3d at 595. Based on the complaint, the facts that Plaintiffs knew in 2012 were sufficient to provide them with notice that they were injured by Defendants' negligence.

Plaintiffs contend that their cause of action did not accrue until May 2013 when they received additional medical records and a letter from an attorney opining that Defendants were negligent. According to Plaintiffs, although the placenta pathology report they obtained in 2012 revealed the existence of the infection that caused Catherine's disabilities, it did not indicate that this infection was present because Defendants failed to treat Mother during her March 10-17 hospital stay. Plaintiffs argue that their claims could not have accrued until they learned that the infection existed because of Defendants' negligence. The complaint does not contain any factual

allegations that support this argument. It does not allege that Plaintiffs received any new medical records in 2013 or that Plaintiffs discovered any new facts after 2012.

The foregoing notwithstanding, assuming that the only new fact discovered in 2012 was that a previously-undisclosed infection was present when Catherine was born, this discovery, in conjunction with the other facts previously known to Plaintiffs in 2012, was sufficient to "put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct." *Pero's*, 90 S.W.3d at 621; *see Sherrill*, 325 S.W.3d at 595. Specifically, in 2012 Plaintiffs knew: (1) that Mother had been hospitalized twice at ParkRidge after experiencing similar symptoms; (2) that Catherine had been born with brain damage during Mother's second hospitalization; (3) that Mother was being treated for an infection of unknown origin when Catherine was born; and (4) that the placenta pathology report indicated that the placenta was infected. Accordingly, the facts known to Plaintiffs in 2012 were sufficient to put them on notice that they had suffered an injury as a result of Defendant's wrongful conduct.

Thus, Plaintiffs discovered their cause of action and uncovered any fraudulent concealment in 2012, and the statute of limitations began to run on December 31, 2012 at the latest. *See Redwing*, 363 S.W.3d at 459, 463. Assuming, as the trial court did, that Plaintiffs timely served Defendants with notice of intent to sue on December 31, 2013, the statute of limitations would have been extended to April 2014. The complaint was not filed until August 2014, which was after the limitation period, as extended, had expired. Accordingly, we affirm the trial court's decision to dismiss the claims of Mother and Father as barred by the statute of limitations. *See* Tenn. Code Ann. § 29-26-116(a)(1)-(2).

## IN CONCLUSION

Because neither Catherine nor her representatives were properly before the trial court, and a decree is void as to any person not to have been before the court in person, or by representation, *see Gentry*, 924 S.W.2d at 680, the trial court's judgment, to the extent it ruled on the merits of Catherine's purported claims, is vacated and this matter is remanded for entry of an order consistent with the foregoing. We affirm the judgment of the trial court in all other respects.

Costs of appeal are assessed against James R. Vandergriff and Samantha J. Vandergriff.

_____
FRANK G. CLEMENT, JR., JUDGE